WALKER ET AL. *v.* VAIL, USE OF HIMSELF AND MUTUAL INSURANCE COMPANY
(Two Appeals in One Record.)

[No. 36, October Term, 1953.]

322

*Decided December 8, 1953.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*J. Royall Tippett, Jr.,* with whom were *Hinckley & Singley* on the brief, for William F. Walker, Jr., appellant.

*Clater W. Smith,* with whom were *Roszel C. Thomsen, M. King Hill, Jr.,* and *Clark, Thomsen & Smith* on the brief, for the Rowe Manufacturing Company, appellant.

*Thomas G. Andrew* for the appellee.

SOBELOFF, C. J., delivered the opinion of the Court.

This appeal brings up for review a judgment obtained by an injured electrical worker to his own use and to the use of the equitable plaintiff, the insurer of his employer who paid him compensation for the injuries. The judgment was against the manufacturer and installer of an overhead motor court or garage door, the mechanism of which failed, catapulting the worker and causing him to fall a distance of about 20 feet. The principal question is whether there was legally sufficient evidence to justify the submission of the issue of negligence to the jury.

The building in which the garage door was being installed is at 230 Franklintown Road, Baltimore, Md., owned by DeBoy Smith, Inc. and leased to the Great Atlantic & Pacific Tea Company. The term of the lease began on February 1, 1949, when the building was still uncompleted. One of the improvements for which the owner had arranged was the installation of two large overhead garage doors to be equipped with electrical motors to operate them. The defendant, Rowe Manufacturing Company, was the manufacturer of the door; the installer was the defendant, William F. Walker, Jr. The defendants are in dispute as to the precise relation existing between them, Rowe claiming that Walker was an independent contractor for whose negligence, if any, it (Rowe) was not responsible, and Walker claiming that he was in reality the manufacturer's representative. The plaintiff agreed with Walker's contention in this respect, but we need not further consider this issue because of the view we take on the main question, namely, the legal sufficiency of the evidence to show negligence on the part of either or both defendants.

The garage doors were installed in February, 1949, and their motors on the following March 4th, but as the electricity had not been connected with the motors, the doors were for a time operated manually by means of a sprocket and continuous chain accessible to persons on the ground level. On March 29th the plaintiff, Vail, in the course of his employment, was checking wires in a switch box attached to a roof beam. He was standing with one foot on the open south garage door, which was then in a horizontal position and constituted, as it were, a floor under him, and his other foot was on the door track of the north door. As the south door was open, its spring was slack; but the north door being closed, its spring was extended and taut. As the plaintiff stood there examining the wiring in the switch box he "had the sensation of being catapulted" to the ground. He was unable to tell more about the manner of his injury. Other witnesses testified that "some of the mechanism had loosened up and recoiled, flew apart and fell to the floor". The falling mechanism had been installed on the track of the north door upon which one of the workman's feet rested at the time of the accident. The injured man was taken to the hospital by one of the witnesses who returned to the scene of the accident an hour or two later. He testified, "we looked at more or less all the mechanism that was on the ground, the spring or the sheave", which he described as a pulley that is held by a yoke with a pin through it that in turn is held in position by a cotter pin or key. In the inspection which the witness said he "possibly" made, he saw no cotter key in the mechanism on the floor, or on the floor itself. It was later found that of the mechanical assemblies which remained in place overhead at least one or two had cotter keys missing.

At the trial the inquiry was, assuming that the cotter keys were missing at the time of the accident and that this caused or contributed to the accident, had these keys ever been installed in the mechanism and, if so, when and by whom were they removed? As the direct

testimony is unclear, the litigants seek to draw various inferences favorable to their respective positions; but the important legal question to which counsel addressed themselves, both below and in this court, was, upon whom is the burden of showing the details of the accident. The defendants unite in arguing that the plaintiff had the burden of proving the defendants' negligence and that the failure in proof entitled them to a directed verdict. The plaintiff maintained that the circumstances permit an inference of defendants' negligence. The rule is, of course, that the burden of proving the defendants' negligence rests upon the plaintiff. There are, indeed, circumstances where, without shifting this burden, an inference of negligence on the part of a defendant may arise from the circumstances, if unexplained. This doctrine, called *res ipsa loquitur,* may be invoked by a plaintiff "where the injury arises from some condition or event that is in its very nature so obviously destructive of the safety of persons or property and is so tortious in its quality as, in the first instance at least, to permit no inference save that of negligence on the part of the person in control of the injurious agency". *Strasburger v. Vogel,* 103 Md. 85, 89, 63 A. 202, 203; *Armour v. Leasure,* 177 Md. 393, 9 A. 2d 572. The words importantly to be noted are, "in control of the injurious agency". There would be no logic or justice in applying such a doctrine where the defendant is not in control. Where, as here, a lapse of twenty-five days intervened between the installation of the equipment and the happening of the accident, during which interval neither of the defendants, but rather the occupant of the building and others for whom the defendants are in no way legally responsible, were in control and had access to the instrumentality which occasioned the injury, it would be inappropriate and unjust to apply the doctrine.

The injured plaintiff himself testified on cross-examination, without objection, that he had heard that there had been some difficulty with the north door before

the accident and that it would not open. In his deposition, a portion of which was read into the testimony, he said: "Well this particular day—it all depends—they messed with the doors, run them by hand until I understand—well, I know for a fact they couldn't get the doors going up and down, they got to messing with them, then they fouled up the channels, the boys were careless, but the door on the left-hand side one morning was jammed." On the witness stand he acknowledged making this statement in his deposition and added, "but I still can't say that the door was jammed the day of the injury".

It is true that the suggestion of tampering with the equipment was at best hearsay and rather vague; but even if, despite its admission without objection, this testimony is disregarded as proof of tampering with the mechanism, it nevertheless illustrates how the accident could well have happened through the intervention of causes set in motion by others and at times when the defendants were not in control.

The appellee argues that the appellants had a continuing duty in respect to the doors until after the date of the inspection; that the contract between Rowe and Walker contemplated that the doors would operate properly when motor-driven, and at the time of the accident the motor operation had not commenced. It is, of course, well recognized that joint actors may be legally responsible even though their participation in a tort occurred at different times, in different ways, and in unequal proportions; *Cooley on Torts,* Third Edition, page 213, *Lawson v. Clawson,* 177 Md. 333, 340, 9 A. 2d 755, 758, but here the burden of going forward with the evidence cannot be imposed on the appellants if they were not in control, and control is not the same thing as a contractor's obligation to render further services. Liability for negligence committed by a manufacturer or installer may, of course, survive the change of control, but a defendant's burden of going forward with proof

does not arise if he was not in control at the time of the accident.

Accordingly, the record here shows an accident which may have been caused by the absence of a cotter key, but there is no explanation as to when, how or through whom this condition was created. The cotter key could have been negligently omitted at the time of the installation, or it could have been installed negligently, or it could have been removed by third persons after a proper installation. The jury had no basis in the testimony for a choice based on a rational inference. It could reach a conclusion only by speculation. It is well settled that where either of two causes results in injury, for only one of which a defendant is responsible, and there is no basis for concluding that that was the cause rather than the other for which the defendant is not responsible, no recovery can be had. *State, use of Boznango v. Blumenthal-Kahn Electric Co.*, 162 Md. 84, 91, 159 A. 106, 109; *Klan v. Security Motors*, 164 Md. 198, 164 A. 235; *Cloverland Farms Dairy v. Ellin*, 195 Md. 663, 75 A. 2d 116; *Washington Sub. San. Comm. v. Musgrove*, 203 Md. 231.

In an earlier appeal of this case, *Vail v. Walker*, 199 Md. 441, 87 A. 2d 171, the ruling of the trial court on demurrer dismissing the case against the A. & P. without leave to amend was affirmed and that company is not a party here. As to Rowe, the demurrer was sustained in the lower court but reversed on appeal, and was affirmed as to Walker but with leave to amend. In the amended declaration the A. & P. was, of course, no longer a party, but sufficient allegations were made against Walker and Rowe. The plaintiff had the burden of proving negligence, and this burden he failed to meet.

With the plaintiffs' contention that the garage doors were a dangerous instrumentality under the rule of *MacPherson v. Buick*, 217 N. Y. 382, 111 N. E. 1050, we do not agree. The doctrine has received a qualified recognition in Maryland, but has not been applied in any

case resembling the one before us. See *Otis Elevator v. Embert*, 198 Md. 585, 84 A. 2d 876.

The trial judge should have directed a verdict for the defendants.

*Judgment reversed with costs.*